IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**FILED**

MAR 1 1 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

**JAMILLAH REYNOLDS**
4924 Claradale Road
Toledo, Ohio 43614

        Plaintiff,

v.

**ELEVANCE HEALTH, INC.**
**(f/k/a ANTHEM INC.)**
220 Virginia Avenue
Indianapolis, Indiana 46204

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.

**3:24 CV 459**

JUDGE: **JUDGE HELMICK**

MAGISTRATE: **MAG JUDGE CLAY**

**JURY DEMAND ENDORSED HEREON**

## COMPLAINT

### I.    Preliminary Statement

1.    This action seeks back pay; compensatory and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Ohio's Laws Against Discrimination when Defendant discriminated against Plaintiff, committing promotion discrimination (or wrongful failure to promote) whereby the Plaintiff was passed over for promotion for unlawful reasons.

### II.    Jurisdiction and Venue

2.    This action brings discrimination claims against Elevance Health Inc. f/k/a Anthem Inc. under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and Ohio's Laws Against discrimination pursuant to discrimination charges timely filed with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission, and receipt of a Right-to-Sue letter less than ninety days ago;

3.      This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights).

4.      Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202.

5.      Compensatory and punitive damages may be awarded under Title VII, 42 U.S.C. § 1981a, and 42 U.S.C. §§ 1981; 1983.

6.      Costs and attorneys' fees may be awarded pursuant to Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; and 42 U.S.C. § 1988.

7.      Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and because the claims arose in County, Ohio, where Defendant's business office is located, and decisions were made regarding Plaintiff's employment.

## III.    Parties

8.      Plaintiff Jamillah Reynolds ("Plaintiff" or "Ms. Reynolds") is a 44-year-old African American female who at all times relevant to this complaint lived in Lucas County, Ohio, and was employed by Defendant.

9.      Defendant, (Elevance Health Inc., f/k/a Anthem Inc.), is one of the nation's leading health benefit companies. The company's services include offering Medicare and Medicaid benefits, which include medical, pharmaceutical, dental, behavioral health, long-term care, and disability plans through affiliated companies.

## IV.    Facts

10.     Elevance Health Inc. discriminated against the Plaintiff based on her race (African American /American Indian). Elevance Health Inc. failed to promote the Plaintiff to the position of Director of

Learning and instead filled the position with a less qualified Caucasian employee whom Plaintiff was required to train. The Plaintiff was required to adhere to the Director of Learning job description of roles and responsibilities which were set as annual review performance goals.

11. The Plaintiff was qualified for the Director of Learning position and has twenty-three years of management experience.

12. Before being hired at CareMore, the Plaintiff held several managerial and directorial Positions at other companies from 1998 – 2013. Additionally, the Plaintiff served as the Chief Executive Officer of her family business from 2017 – 2022.

13. CareMore hired Plaintiff on August 26, 2013, as a Manager of Customer Service, managing over ten direct reports.

14. In May 2015, Plaintiff was promoted to CareMore Strategic Sourcing Manager, managing over four direct reports, CareMore was acquired by Wellpoint in 2016.

15. Beginning in 2017, Plaintiff applied for the Anthem Inc. Regulatory Compliance Manager Position. Plaintiff had several dotted-line employees who reported directly to Plaintiff, but Plaintiff did not manage the employees.

16. Beginning in 2019, Plaintiff asked her then supervisor and staff vice-president for a promotion due to a workload increase and overseeing dotted-line employees. The promotion and career progression requests were ultimately ignored. The Plaintiff received an adverse employment action of retaliation and the Plaintiff's title was changed unbeknownst to the Plaintiff from Regulatory Compliance Manager to Provider Experience Manager, the Plaintiff remained responsible for adhering to her Regulatory Compliance Manager job duties and managing dotted-line employees.

17. Beginning in 2020, the Plaintiff's job title was changed from Provider Experience Manager

3

to Provider Operations Manager but remained responsible for adhering to Regulatory Compliance Manager job duties and roles and responsibilities.

18. From 2020 – 2022 Plaintiff served as an internal consultant on behalf of Anthem Inc. Learning Center of Excellence working in conjunction with Deloitte in building out the Provider Data Solutions Quality Learning & Development business unit. The Plaintiff was responsible for designing the organizational structure and worked with Anthem Inc. Human Resources to develop an organizational chart and job descriptions detailing roles and responsibilities.

19. On July 28, 2022, Plaintiff applied for the newly created Director of Learning position within the Provider Data Solutions business unit in which she worked overseeing regulatory compliance operational readiness under the title of Provider Operations Manager. The Plaintiff applied for the Director of Learning position as recommended by her then supervisor Erikka Smith. The requirements for the Director of Learning opportunity were ten years of related experience, including five years of leading direct reports which the Plaintiff had surpassed the minimal requirements necessary.

20. Beginning of November 2022, the Plaintiff's supervisor Erikka Smith was terminated, and The Plaintiff began reporting to the newly hired Director of Learning Lisa Lambert.

21. January 2022 through Plaintiff's termination on September 14, 2023, Plaintiff was responsible for adhering to the Director of Learning and Staff VP of Quality Learning and Development job descriptions and duties. The Plaintiff's annual performance review goals were aligned with the Director of Learning and Staff VP of Quality and L&D roles and responsibilities as a directive of Plaintiff's former supervisor Erikka Smith.

22. March 2023, during the Plaintiff's 1:1 annual review and bonus discussions Plaintiff was notified by her supervisor Lisa Lambert that the Director of Learning job description roles/responsibilities, and goals would remain a part of the Plaintiff's annual performance goals.

4

Additionally, Plaintiff was instructed that she would need to conduct as many training sessions as possible to train the Director of Learning and her direct reports on roles and responsibilities, Provider Data Solutions Operations, quality, and learning oversight, and compliance regulatory integration. The Plaintiff conducted several training sessions from November 2022 through September 2023 as directed by supervisor Lisa Lambert and managing several dotted-lined employees.

23.     April 2023, the Plaintiff contacted Human Resources business partner Tony Alexander on several occasions. Several incidents occurred where Lisa Lambert made derogatory statements directly to the Plaintiff. The Plaintiff informed Tony Alexander that she needed assistance completing an Associate Relations submission because the online submission tool was not working. On April 24, 2023, Tony Alexander filed an associate relations investigation complaint on the Plaintiff's behalf in which the Plaintiff reported discrimination, harassment, retaliation, hostile working environment, and that the Plaintiff was responsible for the Director of Learning's annual review goals and job description roles and responsibilities.

24.     On June 20, 2023, Plaintiff filed an EEOC charge.

25.     On June 22, 2023, Plaintiff contacted human resources business partner Tony Alexander via instant message and email requesting a meeting with him and Provider Data Solutions Vice President Shane Hochradel to discuss resolving continued discrimination, harassment, retaliation, hostile work environment, career progression, and promotion opportunities.

26.     On July 3, 2023, Plaintiff was notified by Elevance Health Inc.'s human resource business Partner Tony Alexander that his first email of the day was awesome as Elevance Health Inc. had received the Plaintiff's EEOC charge and Tony Alexander stated via the text "Let's see how they move now," referring to management. The plaintiff immediately contacted Tony Alexander for clarification via an instant message voice call. Tony Alexander informed the Plaintiff that the EEOC charge had been

received. Tony Alexander also notified the Plaintiff that she had not been considered for promotions, career progression, or the Director of Learning position that the Plaintiff applied for in 2022 because the Plaintiff was on a list that consisted of Provider Data Solutions Operations African American women associates who had made complaints regarding requests for career progression, and promotions. Tony Alexander informed the Plaintiff that she had been deemed a whistleblower by Elevance Health Inc. and that it would be impossible to be promoted or transferred to another department. Tony Alexander also informed the Plaintiff that he would schedule a resolution meeting to discuss the Plaintiff's claims of discrimination and discuss a promotion/progression with Shane Hochradel on the Plaintiff's behalf, but it wouldn't go further than just a meeting due to the Plaintiff being on the list of Provider Data Solutions African American women associates who made complaints, and requests for career progression and promotions.

27.     July 2023, Plaintiff met with Elevance Health Associate Relations Representative Ashlynn Dunn and Tony Alexander who investigated the Plaintiff's initial Associate Relations complaint. Ashlynn Dunn informed the Plaintiff that she would need to continue to work the Director of Learning job duties and any other duties as assigned as all Elevance Health associates were overworked, underpaid, and working out of their job description.

28.     July 2023, Plaintiff met with Provider Data Solutions Vice President Shane Hochradel. Shane Hochradel called the Plaintiff the Provider Data Solutions' top performer and informed the Plaintiff to stop burning the midnight oil as the Plaintiff reported working 70+ hours per week. Shane Hochradel informed the Plaintiff that he understood the difficulties of being overlooked because the Plaintiff had over eight supervisors since 2017 in the Provider Data Solutions organization. Also, Shane Hochradel informed Plaintiff that he was aware of the email that the Plaintiff had sent to Tony Alexander regarding career progression and would provide feedback, in which Shane Hochradel never provided feedback.

29.     August 2023, the Plaintiff met with Elevance Health Inc. Associate Relations representative Veronica Cano after filing another Associate Relations complaint, Veronica Cano stated she would follow up with the Plaintiff once another investigation was complete to discuss findings that never occurred.

30.     In August 2023, the Plaintiff was assigned to a new supervisor Phil Weber. Phil Weber was the Plaintiff's eighth manager in six years. The Plaintiff immediately notified her new supervisor of the discrimination, harassment, and retaliatory actions that occurred, additionally, the Plaintiff notified Phil Weber that her job duties were aligned with the Director of Learning and Regulatory Compliance Manager job roles and responsibilities.

31.     September 12, 2023, Crystal Saunders from the Elevance Health Inc. Ethics department contacted the Plaintiff via instant messenger and the Plaintiff's cell phone. The Plaintiff met with Crystal Saunders and went over annual review goals, the Director of Learning job description, roles and responsibilities, and Regulatory Compliance Manager roles and responsibilities. The Plaintiff notified Crystal Saunders that she was working an excess of 70+ hours per week.

32.     September 13, 2023, the EEOC position statement was due and was submitted by Elevance Health Inc. f/k/a Anthem Inc.

33.     September 14, 2023, the Plaintiff received a voicemail message from Shane Hochradel at 3:03 pm stating that Elevance Health Inc. was revoking the Plaintiff's system access because they hadn't heard from the Plaintiff the entire day. The plaintiff returned Shane Hochradel's call immediately, Shane Hochradel stated that the Plaintiff would be placed on leave of absence until further notice due to poor performance and that Elevance Health Inc. human resources would be in contact later that day. The Plaintiff hasn't heard f from Human Resources or any other representatives since this date.

34.     October 14, 2023, via UPS the Plaintiff received a termination notification dated September

21, 2023. Termination documentation was not discussed with the Plaintiff as she was never contacted by Elevance Health Inc. management and / or human resources.

## V.    Claims for Relief

### A.    Discrimination in Violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

26.    Paragraphs 1 through 34 above are realleged and incorporated herein.

27.    By committing promotion discrimination, Elevance Health Inc. f/k/a Anthem Inc. unlawfully committed promotion discrimination against the Plaintiff when a motivating factor was her race, Defendant has committed race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.

### B.    Discrimination in Violation of Ohio's Laws Against Discrimination ORC 4112

28.    Paragraphs 1 through 34 above are realleged and incorporated herein.

29.    By committing promotion discrimination, Elevance Health Inc. f/k/a Anthem Inc. unlawfully committed promotion discrimination against the Plaintiff when a motivating factor was her race, Defendant has committed race discrimination in violation of Ohio's Laws Against Discrimination O.R.C. 4112.

## VI.    Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

a.    declare that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Ohio's Laws against Discrimination;

b.    order such injunctive and equitable relief as will make Plaintiff whole for Defendant's violations, including back pay and benefits, and pre- and post-judgment interest;

c.    award compensatory and, against Defendant in excess of $25,000;

d.      allow reasonable attorneys' fees and costs; and

e.      grant such other relief as the Court may deem appropriate.

_____
Jamillah Reynolds-Majors
Pro se Litigant

**JURY DEMAND**

4924 CLARADALE RD.
TOLEDO, OH 43614
(419) 386. 7083

Plaintiff requests a trial by a jury of eight (8) persons.